United States District Court
Southern District of Texas
**ENTERED**
May 28, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCD BLK 251 HOUSTON LLC, | § § § § § § § § § § § § | CIVIL ACTION NO. 4:20-cv-03463 |
| Plaintiff, | | |
| vs. | | JUDGE CHARLES ESKRIDGE |
| MT JEFFERSON HOLDINGS LLC, | | |
| Defendant. | | |

OPINION AND ORDER
GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff SCD BLK 251 Houston, LLC is a real estate construction and development company that owns a parking lot in downtown Houston. Defendant Mt Jefferson Holdings, LLC owns the Four Seasons Hotel that's across the street. Over two decades ago, the prior owners of these properties reached an agreement by which a sky bridge or tunnel might later connect the Four Seasons with a structure to be built atop the parking lot.

SCD filed this suit seeking a declaration that it properly exercised its putative right and option to make that connection. Both parties moved for judgment on the pleadings.

The motion by Mt Jefferson is granted. Dkt 18. The motion by SCD is denied. Dkt 17.

1. Background

Crescent Real Estate Funding IX, LP originally owned both the Four Seasons Hotel (which sits on land designated as Block 252) and the adjacent plot of land (which is designated as Block 251). Crescent sold the Four Seasons to HEF Houston LP in November 2000. HEF and Crescent also entered into a separate agreement titled "Agreement Regarding Span." See Dkt 17-1 at 2–9. A recital within it states, "HEF and Crescent

agreed, as part of the sale of the Hotel, to permit Crescent the future right and option to connect a skybridge or tunnel to the Hotel on the terms and conditions set forth below." Id at 2.

The substance of that granted right is this single, dense paragraph:

> <u>Connection Right.</u> HEF hereby grants and conveys to Crescent the successors and assigns in ownership (each, a "Block 251 Owner") of Block 251 S.S.B.B., Houston, Texas ("Block 251"), *the future right to connect an air bridge or tunnel (a "Connection") to a point on the wall of the Improvements*, provided (a) such right shall be limited to a Connection located on or below the third floor of the Improvements that is mutually agreed upon the owner of the Property ("Property Owner") and Block 251 Owner, and (b) the Connection shall not, without the consent of the Property Owner, interfere with the current configuration of the Hotel (for example, the Connection will not be permitted to attach at the location of the restaurant(s) or banquet rooms of the Hotel without the consent of the Property Owner). Block 251 Owner and Property Owner may each use such Connection for access to and from the Improvements to "Class A" improvements to be constructed on Block 251, if any, *pursuant to an agreement which shall generally be in the form of the existing span agreements affecting the Property*, except as otherwise provided herein. The form of such agreement shall incorporate provisions requiring the consent of Property Owner to the exact location of the Connection, the design of the Connection, the method of construction of the Connection, insurance coverage during and after the construction of the Connection and the timing of construction of the Connection. *Property Owner agrees that it will not unreasonably*

> *withhold, condition or delay its consent to the construction of the Connection*; however, it shall be reasonable for Property Owner to withhold its consent in the event Property Owner determines, using its reasonable discretion, that such a tunnel or air bridge, once constructed and fully functional, would adversely affect the operations of the Hotel, other than the imposition of increased operating costs resulting from the operation of the tunnel or air bridge. All costs of constructing the Connection shall be paid by Block 251 Owner, provided that fees and expenses incurred by Property Owner in negotiating and reviewing the plans for the Connection (including without limitation, legal, architectural and engineering fees) shall be paid by Property Owner. Block 251 Owner shall be solely responsible for all capital expenditures required for the upkeep of the Connection, except for the exterior doors from the Connection to the Hotel. *The execution of a span agreement between Property Owner and the Block 251 Owner shall supersede and cancel the retained rights set forth in this Agreement.*

Id at 2–3 (emphasis added).

The span agreement also provides, "The right granted above shall be exercised, if at all, on or before December 31, 2020." Id at 3. It further states, "Time is of the essence in the performance of all obligations under this Agreement." Id at 4. And it requires that it be construed under Texas law. Ibid.

A memorandum of rights executed concurrently with the span agreement was recorded in the Harris County real property records. Dkt 1-1 at ¶ 8; see Dkt 17-1 at 11–13. Ownership of the Four Seasons thereafter eventually passed from HEF to Mt Jefferson, and ownership of Block 251 eventually passed from Crescent to SCD. Dkt 1-1 at ¶¶ 8–9. The parties explained at hearing that Block 251 at present remains an empty lot used solely for parking.

3

This dispute began when SCD sent Mt Jefferson a letter on April 8, 2020. That letter stated, "SCD has elected to exercise the right to connect given to SCD under the Span Agreement." Dkt 17-1 at 15. SCD asserts that it has since "undertaken good-faith efforts to finalize and enter the 'span agreement' contemplated and referenced in the Agreement." Dkt 1-1 at ¶ 13. For example, SCD states that it "engaged the same architectural and structural engineering firms that Mt. Jefferson previously hired to perform work on the property, rendered several conceptual designs for a potential sky bridge, and proposed several connection points." Ibid. SCD alleges that Mt Jefferson "refused to agree to any connection point proposed by SCD and refused to propose any connection points of its own." Id at ¶ 14.

SCD filed a complaint in Texas state court in August 2020, seeking a declaratory judgment that it "exercised its right and option to connect a sky bridge from Block 251 to the Property by providing written notice that it exercised such right prior to December 31, 2020." Id at ¶ 18.

Mt Jefferson removed based on diversity jurisdiction. Dkt 1. The parties then filed cross motions for judgment on the pleadings under Rule 12(c). Dkts 17, 18.

> 2. Legal standard

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion seeking such relief "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co v Morgan Stanley Dean Witter & Co*, 313 F3d 305, 312 (5th Cir 2002), quoting *Hebert Abstract Co Inc v Touchstone Properties Limited*, 914 F2d 74, 76 (5th Cir 1990, *per curiam*).

This means that the legal standard for motions under Rule 12(c) is the same as those for motions under Rule 12(b)(6). See *Gentilello v Rege*, 627 F3d 540, 543–44 (5th Cir 2010). As such, when deciding a motion under Rule 12(c), the reviewing court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant. For example, see *In re*

*Katrina Canal Breaches Litigation*, 495 F3d 191, 205 (5th Cir 2007); see also Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1368 (West 3d ed April 2021 update). It also "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014), quoting *Collins v Morgan Stanley Dean Witter*, 224 F3d 496, 498 (5th Cir 2000).

Where (as here) both parties move for judgment on the pleadings, the reviewing court must evaluate each motion separately in a manner akin to consideration of cross-motions for summary judgment. For example, see *Mt Hawley Insurance Co v Huser Construction Co*, 2019 WL 1255756, *4–5 (SD Tex), citing *Shaw Constructors v ICF Kaiser Engineers, Inc*, 395 F3d 533, 538–39 (5th Cir 2004). This means that the court views the pleadings, attachments, and inferences with respect to each motion in the light most favorable to the nonmoving party. Compare *In re Katrina Canal Breaches Litigation*, 495 F3d at 205 (as to Rule 12(c)), with *Amerisure Insurance Co v Navigators Insurance Co*, 611 F3d 299, 304 (5th Cir 2010) (quotation omitted) (as to Rule 56). If one party shows that it's entitled to judgment as a matter of law, that cross motion should be granted and the other denied. Compare *Great Plains Trust Co*, 313 F3d at 312–13 (as to Rule 12(c)), with *Tidewater Inc v United States*, 565 F3d 299, 302 (5th Cir 2009) (as to Rule 56). The fact that both parties move for judgment on the pleadings in no way indicates that a triable issue exists.

SCD attached several documents to its complaint and motion for judgment on the pleadings. These include the span agreement, the memorandum of span agreement, the letter of April 8, 2020 purporting to exercise the connection right, and the deed to Block 251. See Dkt 17-1 at 2–9, 11–13, 15–16, 25–32; see also Dkt 17 at 6. Both parties reference and rely upon these documents in their respective motions and responses, thus agreeing that they're appropriately considered here.

    3.   Analysis

The parties dispute two main issues. One is whether the span agreement is even enforceable. Mt Jefferson argues that it isn't, characterizing it as simply "an agreement to agree." Dkt 18 at 10–18. In its view, the terms related to the construction of the sky

bridge provide that many of the material details (such as where the connection will go, the timing of the project, and the rest) are to be determined only in a subsequent agreement between the parties. With so much having been left undecided or unspecified, Mt Jefferson says, the parties really didn't agree to anything according substantive right. SCD sees things differently, arguing that all necessary material terms were previously agreed between Crescent and HEF. And as for the need of a future agreement, it isn't really so open-ended because the span agreement restricts Mt Jefferson's authority to negotiate, requiring that it "will not unreasonably withhold, condition or delay its consent to the construction of the Connection." See Dkt 19 at 11, quoting Dkt 17-1 at 3.

Enforceability needn't be resolved—or rather, the span agreement can be assumed to be an enforceable option contract as argued by SCD. This is so because the other issue is whether (assuming that it is enforceable) SCD properly exercised its right to connect a sky bridge to the Four Seasons. That presents a question of timing that can be resolved as a matter of law according to the undisputed facts presented by the parties.

The span agreement was originally signed over twenty years ago in November of 2000. And it provided, "The right granted above shall be exercised, if at all, on or before December 31, 2020." Dkt 17-1 at 3. The date set out in this sentence is of course important. But so are the two operative clauses that precede it. Quite plainly, *the right granted above* refers to the substantive entitlement conferred by the span agreement. That paragraph is titled "Connection Right," and it states that what was granted and conveyed was "the future right to connect an air bridge or tunnel (a 'Connection') to a point on the wall . . . ." Id at 2. That is the right that *shall be exercised, if at all,* before the end of the year 2020. What does it mean for that *right* to be *exercised* prior to year-end 2020? Texas law answers and resolves that question against the declaration sought by SCD.

Where (as here) an option contract doesn't specify the manner of exercise, "the optionee is only required to notify the optionor prior to the expiration of the option period, and then tender performance within a reasonable time thereafter to

exercise the option." *Faucette v Chantos*, 322 SW3d 901, 910 (Tex App—Houston [14th Dist] 2010, no pet) (collecting cases). This requires *both* timely notice *and* subsequent legal tender within that reasonable timeframe. For example, see *English v English*, 44 SW3d 102, 104–05 (Tex App—Houston [14th Dist] 2001, no pet). The tender of performance under Texas law ordinarily requires a party to show that it has complied with its contractual obligations. For example, see *DiGuiseppe v Lawler*, 269 SW3d 588, 594 (Tex 2008) (collecting cases). But so-called *actual tender* isn't required if it would be "a useless act, an idle ceremony, or wholly nugatory," as in a situation where the other contracting party is refusing to perform. Ibid, quoting *Wilson v Klein*, 715 SW2d 814, 822 (Tex App—Austin 1986, writ refd nre). Even so, the party seeking performance must show that it was "ready, willing, and able to timely perform" its obligations, even "ready, desirous, prompt, and eager." Id at 593, quoting *Ratcliffe v Mahres*, 122 SW2d 718, 721–22 (Tex Civ App—El Paso 1938, writ refd), in turn quoting John Norton Pomeroy, Jr, 4 *A Treatise on Equity Jurisdiction* § 1408 (Bancroft Whitney 3d ed 1905).

It is important to note the span agreement at issue is one known to the law as a *unilateral contract*. Such a contract "occurs when there is only one promisor and the other party accepts, not by mutual promise, but by actual performance or forbearance." *Vanegas v American Energy Services*, 302 SW3d 299, 301 (Tex 2009), quoting 1 *Williston on Contracts* § 1.17 (Thomas Reuters 4th ed 2007). "The promisee commits himself to nothing" in this type of contract. *Dodson v Stevens Transport, a Division of Stephen Foods, Inc*, 776 SW2d 800, 805 (Tex App—Dallas 1989, *en banc*, no writ). Yet on the other hand, the promisor assumes obligations that trigger if the promisee chooses to perform actions previously specified by the offer. *Johnston v Kruse*, 261 SW3d 895, 899 (Tex App—Dallas 2008, no pet) (citations omitted).

Option contracts are unilateral in character except in "rare instances." *Casa El Sol-Acapulco, SA v Fontenot*, 919 SW2d 709, 717 (Tex App—Houston [14th Dist] 1996, writ dismissed). And clearly, the contract offered by Mt Jefferson to SCD by the span agreement (or more precisely, as between their predecessors) was

7

unilateral in character. That is, SCD was never obligated to do anything. But it could choose to exercise its "future right to connect" inherited from Crescent, and thus force Mt Jefferson to follow through on its inherited promise from HEF—to enter into a secondary span agreement and allow SCD to build a skybridge connection. See generally *Casa El Sol-Acapulco*, 919 SW2d at 717 n 8, citing 1A *Corbin on Contracts* § 260 (West rev ed 1964).

These distinctions—that the span agreement is assumed to be an option contract, and that it is of its nature a unilateral one—are important. For a respected treatise on the subject explains that "it is well settled that time is of the essence of an option"—even without an "express provision" stating it as such, "since an option by its very terms must be exercised within a specified time and otherwise in accordance with specified provisions." 15 *Williston on Contracts* § 46:12. And it further states, "If the option offers a unilateral contract, then *performance*—and *not merely an indication of an intention to exercise the option*—must be tendered within the stated period." Ibid (emphasis added) citing, among others, *Jones v Gibbs*, 130 SW2d 265, 273 (Tex Comm'n App 1939), in turn citing Frank James, *The Law of Option Contracts* § 863 (Bender–Moss 1916). Even apart from this generally applicable principle, the span agreement itself globally admonishes, "Time is of the essence in the performance of all obligations under this Agreement." Dkt 17-1 at 4. Texas law provides that "if it is clear the parties intend that time is of the essence to a contract, timely performance is essential to a party's right to require performance by the other party." *Mustang Pipeline Co v Driver Pipeline Co*, 134 SW3d 195, 196 (Tex 2004, *per curiam*), citing *DEW Inc v Depco Forms, Inc*, 827 SW2d 379, 382 (Tex App—San Antonio 1992, no writ).

In accord is decision in *Wilson v Klein*, holding, "Where time is of the essence of a contract, a party must perform *or tender performance* in strict compliance with the provisions of the contract *within the time prescribed*, in order to entitle him to specific performance." 715 SW2d 814, 822 (Tex App—Austin 1986, writ refd nre). (emphasis in original), quoting *Liedeker v Grossman*, 206 SW2d 232, 234–35 (Tex 1947). An option in such context

8

can't be allowed to continue "the contract several years past the time required for the parties' performance, notwithstanding that they stipulated that timeliness was an *essential* aspect of any obligation, right, or estate created in the contract." Id at 823 (emphasis in original). Contrary holding would unreasonably extend the rights associated with the option beyond the set term, and the optionee "would obtain a valuable contract right for which he had not paid consideration and [the optionor's] property would be burdened by a contract right for which he received no consideration." Ibid.

The letter by SCD on April 8, 2020 must be read and understood with these principles in mind. That letter stated, "SCD has elected to exercise the right to connect given to SCD under the Span Agreement." Dkt 17-1 at 15. That notice was certainly timely, at least in the sense of being submitted prior to December 31, 2020. But as already shown, the *right granted above* that SCD purports to have exercised was "the future right to connect an air bridge or tunnel (a 'Connection') to a point on the wall . . . ." Dkt 17-1 at 2. *That* is the tender—connection of an air bridge or tunnel—required to be made by the time of (or at least "within a reasonable time" after) the operative date of December 31, 2020. *Faucette*, 322 SW3d at 910. And that is something SCD was quite unprepared to do at the time of its letter.

Generously considered, the ability of SCD to make any "Connection" to the Four Seasons was many years away into the future. True, SCD alleges that its written notice was alone sufficient because it "immediately took steps to tender performance, including engaging architectural and structural engineering firms, rendering and providing conceptual designs for the sky bridge, and proposing multiple connection points." Dkt 17 at 12; see also Dkt 1-1 at ¶ 13; see also Dkt 19 at 8. But that ignores quite a lot. For instance, there's neither a structure on Block 251 at present, nor any specific plans as to what that building will be—even though the span agreement requires it to be a "Class A" improvement. Dkt 17-1 at 2. This means that an entire downtown building of premier quality must be fully and actually rendered by SCD, along with the negotiation and

9

execution of the secondary span agreement between the parties as contemplated under the subject span agreement. The entire building project would also then require extensive permitting and approval by the City of Houston and Harris County. And only then would follow the actual construction of the building, at the end of which a sky bridge might be connected to the Four Seasons Hotel.

As of April 2020, SCD simply wasn't "ready, willing, and able to timely perform" its obligations under any reasonable reading of the span agreement, which specifies a fixed time limit with reference to the actual connection to be made. *DiGuiseppe*, 269 SW3d at 594. Such construction could be said to leave some uncertainty as to application of the span agreement in other circumstances. For instance, would it present a closer question if SCD had sent its letter in April of 2014? How about in April of 2017? Perhaps. But an earlier and more-debatable fact pattern isn't the one at issue here. Instead, there is only the undisputed fact that SCD gave notice nineteen years and four months into a twenty-year term by the end of which any "right to connect" was to have been made. Dkt 17-1 at 2.

"The plaintiff's burden of proving readiness, willingness and ability [to perform] is a continuing one that extends to all times relevant to the contract and thereafter." *Maxey v Maxey*, 617 SW3d 207, 226 (Tex App—Houston [1st Dist] 2020, no pet), quoting *DiGuiseppe*, 269 SW3d at 594. Despite having twenty years to prepare, at no point was SCD ready, willing, and able to timely perform its obligation to actually make the subject connection. Given the definition of the right at issue, its linkage to a time certain by which a connection must be made, the fact that no plans were yet drawn up or construction even begun, and the mandate of a time-is-of-the-essence clause, the letter sent by SCD in April of 2020 was insufficient to exercise the right conveyed to it under the span agreement.

SCD isn't entitled to the declaration it seeks. The declaration must instead issue in favor of Mt Jefferson.

### 4. Conclusion

The motion for judgment on the pleadings by Defendant Mt Jefferson Holdings, LLC is GRANTED. Dkt 18.

The motion by Plaintiff SCD BLK 251 Houston, LLC is DENIED. Dkt 17.

Mt Jefferson must submit a proposed form of judgment by June 11, 2021.

SO ORDERED.

Signed on May 28, 2021, at Houston, Texas.

*/s/ Charles R Eskridge III*

Hon. Charles Eskridge
United States District Judge